**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| SHERIF AFIFI,<br><br>Plaintiff,<br><br>          v.<br><br>FOUNDATION BUILDING MATERIALS INC. and MARJAM SUPPLY COMPANY, INC.,<br><br>Defendants. | No. 25-cv-2884<br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

Before the Court is defendants Foundation Building Materials, Inc. ("FBM") and Marjam Supply Company, Inc.'s ("MSC" and, collectively with FBM, "Defendants") motion to partially[1] dismiss plaintiff Sherif Afifi's ("Plaintiff") complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 4; ECF No. 4-1 ("Moving Br."); *see also* ECF No. 1 ("Compl.").  Plaintiff opposed the motion, ECF No. 8 ("Opp'n Br."), and Defendants replied, Reply Br.  The Court decides the motion without oral argument.  Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).  For the reasons stated below, the Court will grant in part and deny in part Defendants' motion.

I.      **BACKGROUND**

      A.      **Plaintiff's Allegations[2]**

Plaintiff started working for MSC in 2005 as a "warehouse distribution supervisor." Compl. ¶¶ 14–16.  From 2015 to 2019, Plaintiff applied for a promotion to "warehouse manager"

---

[1] As discussed below, although Defendants initially filed a motion to dismiss, in their reply they requested that "the Court convert [their] motion to a Motion to Partially Dismiss the Complaint." ECF No. 9 ("Reply Br.") at 6.

[2] For purposes of this motion to dismiss, the Court accepts the complaint's well-pled factual allegations as true, construes them in the light most favorable to Plaintiff, and draws all reasonable inferences in Plaintiff's favor. *See Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 328 (3d Cir. 2022).

every year. *Id.* ¶ 19. According to Plaintiff, he sought this promotion because the manger position "included a monetary raise, payment as a salaried employee instead [of] as an hourly-rate employee, and an increase in the prestige and supervisory authority that would further [his] career." *Id.* ¶ 20. Plaintiff alleges that each time he applied for this promotion, he "was the most qualified candidate." *Id.* ¶ 21. Nonetheless, MSC allegedly denied Plaintiff the promotion from 2015 to 2019. *Id.* ¶ 23. According to Plaintiff—who is Egyptian—MSC denied him the promotion "because of animus towards" his "national origin." *Id.* ¶¶ 15, 28, 31; *see also id.* ¶¶ 26–30.

After denying him the promotion for four years, MSC elevated Plaintiff to "warehouse manager" in October 2020. *Id.* ¶¶ 32–34. However, according to Plaintiff, he was "promoted in title only and did not receive the benefits" typically associated with the promotion because of his Egyptian national origin. *Id.* ¶ 35; *see, e.g., id.* ¶¶ 37–53. For instance, Plaintiff claims that he "did not receive the office, desk, or computer needed to perform his job duties"—amenities that MSC provided to other "managers . . . not of Egyptian national origin." *Id.* ¶¶ 36–38. Moreover, Plaintiff alleges that, unlike managers "not of Egyptian national origin," MSC "forc[ed] [him] to perform his job duties outdoors." *Id.* ¶¶ 39, 41; *see id.* ¶ 40 ("Due to [MSC] forcing Plaintiff to perform his job duties outdoors, Plaintiff was subjected to extremely harsh temperature conditions . . . ."). Additionally, Plaintiff claims that he "remained an hourly-rate employee" and did not receive a pay increase despite being promoted, whereas other managers were salaried and received higher pay. *Id.* ¶¶ 43–46. And finally, Plaintiff alleges that MSC required him to work "approximately twelve to fourteen hours per day," whereas other managers "not of Egyptian national origin were only required to work approximately eight hours per day." *Id.* ¶¶ 51–52. According to Plaintiff, he "was [MSC's] only Egyptian warehouse distribution manager" "at all relevant times." *Id.* ¶ 17.

2

In May 2022, MSC "terminated Plaintiff's employment" for "destroying company property." *Id.* ¶¶ 56–57.  However, Plaintiff states that the company "reverse manufactured" this justification to conceal its actual motivation: animus towards Plaintiff's national origin.  *Id.* ¶¶ 58–59.  For instance, Plaintiff alleges that MSC did not terminate employees "who were not of Egyptian national origin" for the same conduct.  *Id.* ¶ 60; *e.g.*, *id.* ¶ 61 ("[MSC] did not terminate Allen . . . , a non-Egyptian employee . . . , after Allen negligently drove a . . . truck into a gate.").  Plaintiff alleges that MSC never corrected the disparities that Plaintiff allegedly experienced as a warehouse manager.  *Id.* ¶ 54.  For example, Plaintiff claims that MSC never increased his pay or made him a salaried employee during his time as a warehouse manager.  *Id.*  As a result of MSC's allegedly disparate treatment, Plaintiff states that he has suffered "significant emotional distress, lost wages, and lost future earnings."[3]  *Id.* ¶¶ 62–64.

### B.    Procedural History

On April 18, 2025, Plaintiff filed his complaint, which asserts three claims under 42 U.S.C. § 1981: (1) a claim for disparate treatment, (2) a claim for failure to promote, and (3) a claim for discriminatory termination.  *Id.* ¶¶ 65–85.  All three claims center on Plaintiff's national origin.  *Id.*  In the complaint, Plaintiff seeks compensatory and punitive damages, attorney's fees, pre- and post-judgment interest, and "other . . . relief as the Court deems just and proper."  *Id.* at 10 (Prayer for Relief).  On August 4, 2025, Defendants moved to dismiss all three claims.  ECF No. 4.  However, in their reply brief, Defendants "withdr[ew] the portion of their motion seeking to dismiss [Plaintiff's discriminatory termination claim] and request[ed] [that] the Court convert [their] motion to a Motion to Partially Dismiss the Complaint."  Reply Br. at 6.

---

[3] According to Plaintiff, FBM "acquired all of [MSC's] assets" in March 2023 and "assumed [MSC's] liabilities."  Compl. ¶¶ 10–11; *see also id.* ¶¶ 71, 78, 85.

## II.    LEGAL STANDARD

A Rule 12(b)(6) motion "tests the legal sufficiency of a complaint under [Federal Rule of Civil Procedure 8(a)(2)'s] plausibility pleading standard," *Zanetich v. Wal-Mart Stores E., Inc.*, 123 F.4th 128, 138 (3d Cir. 2024), which requires that a "pleading . . . contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  Accordingly, to survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim [for] relief that is plausible on its face.'"  *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face if the complaint contains "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the misconduct alleged. *Twombly*, 550 U.S. at 556.  In evaluating a Rule 12(b)(6) motion, the Court accepts the complaint's well-pled factual allegations as true, construes them in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor.  *See Lutz*, 49 F.4th at 328.  Moreover, a defendant has the burden of showing that a complaint fails to state a plausible claim for relief under Rule 12(b)(6).  *See Bruni v. City of Pittsburgh*, 824 F.3d 353, 361 n.11 (3d Cir. 2016).

"Technically, the Federal Rules of Civil Procedure require a defendant to plead an affirmative defense, like a statute of limitations defense, in [an] answer, not in a motion to dismiss." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).  However, Third Circuit law allows courts to dismiss a claim pursuant to Rule 12(b)(6) based on a statute of limitations defense, but only if "the time alleged in the statement of a claim shows that the cause of action" is untimely.  *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002); *see Skolas*, 770 F.3d at 249.  "If the [statute of limitations] bar is not apparent on the face of the complaint, then" a court may not use the statute

of limitations as a "basis for a dismissal . . . under Rule 12(b)(6)." *LabMD Inc. v. Boback*, 47 F.4th 164, 179 n.9 (3d Cir. 2022) (quoting *Robinson*, 313 F.3d at 135).

## III.    DISCUSSION

Plaintiff asserts three claims under 42 U.S.C. § 1981, which prohibits certain forms of discrimination "in making and enforcing contracts." *Alcantara v. Aerotek, Inc.*, 765 F. App'x 692, 696 (3d Cir. 2019); *see also Ali v. Woodbridge Twp. Sch. Dist.*, 957 F.3d 174, 180 (3d Cir. 2020). Specifically, Plaintiff asserts claims for (1) disparate treatment, (2) failure to promote, and (3) discriminatory termination. *See* Compl. ¶¶ 65–85. Defendants only seek dismissal of Plaintiff's disparate treatment and failure to promote claims. Reply Br. at 6. Moreover, Defendants argue only that these two claims—as alleged—are untimely, not that Plaintiff has failed to allege each claims' substantive elements. *See* Moving Br. at 4–8; Reply Br. at 1–5. For the reasons stated below, the Court will allow Plaintiff's disparate treatment claim to proceed and will dismiss Plaintiff's failure to promote claim.

### A.    Plaintiff's Disparate Treatment Claim May Proceed

Plaintiff's disparate treatment claim centers on MSC's conduct *after* his promotion to "warehouse manager" around October 2020, specifically the company's (1) insistence that he perform his work outdoors, and related failure to provide him with an office, desk, and computer; (2) failure to increase his pay; (3) failure to change his status to a salaried employee; and (4) insistence that he work twelve to fourteen hours per day. Compl. ¶¶ 32–54; *see* Opp'n Br. at 9. As explained below, most of these allegations can support a timely § 1981 disparate treatment claim.

#### 1.  Claim Accrual and the Continuing Violations Doctrine

The Parties both correctly note that Plaintiff's § 1981 disparate treatment claim is subject to a four-year statute of limitations. Moving Br. at 7; Opp'n Br. at 8; Reply Br. at 5; *see Johnson*

*v. Fed. Exp. Corp.*, 996 F. Supp. 2d 302, 314 (M.D. Pa. 2014), *aff'd*, 604 F. App'x 183 (3d Cir. 2015). However, they disagree on when the claim accrued. Defendants argue that it began to accrue in October 2020 (*i.e.*, upon Plaintiff's promotion), when "Plaintiff became aware of, or should have become aware of, the alleged disparate treatment," and therefore ran "sometime in 2024." Moving Br. at 7. In response, Plaintiff invokes the continuing violations[4] doctrine to argue that his disparate treatment claim began to accrue when Defendants fired him in March 2022 and therefore that the limitations period remains open. Opp'n Br. at 8–9.

Generally, a § 1981 claim begins to accrue when "a reasonable person should have known" of the injury upon which his action is based. *McCreary v. Redevelopment Auth. of City of Erie*, 427 F. App'x 211, 214 (3d Cir. 2011). However, the continuing violations doctrine provides an exception to the general rule. The doctrine applies when "a series of . . . discriminatory acts" constitute "a single, continuing violation," *Evans v. Port Auth. Trans-Hudson, Corp.*, No. 04-4062, 2006 WL 408391, at *3 (3d Cir. Feb. 23, 2006), and allows courts to "consider earlier component acts part of the same unlawful employment practice when at least one of the acts occurred within the limitations period," *Fields v. Am. Airlines, Inc.*, No. 23-2962, 2024 WL 3534478, at *3 n.7 (3d Cir. July 25, 2024); *see also Cardenas v. Massey*, 269 F.3d 251, 256 (3d Cir. 2001) ("[I]f the alleged discriminatory conduct is a 'continuing violation,' the statute of limitations begins to run on the date of the last occurrence of discrimination, rather than the first." (alteration in original) (citation omitted)).

---

[4] Courts sometimes refer to the doctrine as the continuous violations doctrine, *e.g.*, *Brown v. Centurian of Del., LLC*, No. 22-923, 2023 WL 2401818, at *5 (D. Del. Mar. 8, 2023), or the continuing wrong doctrine, *e.g.*, *Williams v. Borough of Highland Park*, 707 F. App'x 72, 76 (3d Cir. 2017).

To determine whether the acts which constitute the claim are part of the same practice, courts consider "(1) whether the violations are part of the same subject matter and (2) whether the violations occurred frequently." *Cibula v. Fox*, 570 F. App'x 129, 135 (3d Cir. 2014). And in evaluating whether the continuous violations doctrine applies, courts must focus "on [the] affirmative acts of the defendant[]," not a prior act's lingering effects or defendant's "refusal to remove" those lingering effects. *Cowell v. Palmer Twp.*, 263 F.3d 286, 293 (3d Cir. 2001); *see Randall v. City of Phila. L. Dep't*, 919 F.3d 196, 199 (3d Cir. 2019) ("[T]he doctrine relies on a defendant's continuing acts, not a plaintiff's continuing injury."); *Barnett v. Lowes Home Ctrs., LLC*, No. 18-2064, 2019 WL 1047496, at *5 (E.D. Pa. Mar. 5, 2019) ("[T]he proper focus is on the time of the discriminatory act not the point at which the consequence[s] of the act become painful." (citation omitted)).

### 2.   The Timeliness of Plaintiff's Disparate Treatment Claim

The complaint's allegations do not clearly show that Plaintiff's disparate treatment claim is time-barred. *Schmidt*, 770 F.3d at 249. As noted above, Plaintiff's disparate treatment claim centers on four categories of conduct: MSC's (1) insistence that he perform his work outdoors, and related failure to provide him with an office, desk, and computer; (2) failure to increase his pay; (3) failure to change his status to a salaried employee; and (4) insistence that he work twelve to fourteen hours per day. Compl. ¶¶ 32–54.

To start, the Court finds that Plaintiff's allegations related to outdoor work (including MSC's failure to provide him with certain amenities) and his fourteen-hour workdays may be able support a timely claim under the continuing violations doctrine. These allegations outline daily conduct from October 2020 to May 2022. *See* Compl. ¶¶ 35–42, 51–54. For instance, Plaintiff alleges that "[a]fter [his] . . . promotion and for the remainder of Plaintiff's employment with [MSC], [MSC] required Plaintiff to work approximately twelve to fourteen hours per day,"

whereas the company required managers of non-Egyptian national origin "to work approximately eight hours per day." *Id.* ¶¶ 51–52. Similarly, "[a]fter Plaintiff's . . . promotion and for the remainder of [his] employment," MSC "forced Plaintiff to perform his job duties outdoors rather than inside [MSC's] warehouse" and denied him the "use of an office, desk, and computer"— unlike managers of non-Egyptian national origin. *Id.* ¶¶ 38–39, 42.

Thus, these allegations detail patterns of essentially continuous conduct. *See Prioli v. Cnty. of Ocean*, No. 18-256, 2021 WL 4473159, at *5–6 (D.N.J. Sept. 30, 2021); *Homel v. Centennial Sch. Dist.*, 836 F. Supp. 2d 304, 319 n.23 (E.D. Pa. 2011); *Gilmore v. Federated Dep't Stores, Inc.*, No. 06-3020, 2008 WL 687260, at *10 n.11 (D.N.J. Mar. 11, 2008). Moreover, because Plaintiff alleges relevant conduct for both categories up to his termination in May 2022, he has alleged acts that "fall[] within the applicable limitations period," *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 166 (3d Cir. 2013), which runs back to April 18, 2021 (*i.e.*, four years before Plaintiff filed his complaint), Compl.; *see Johnson*, 996 F. Supp. 2d at 314. Therefore, at this stage, the Court cannot say that Plaintiff's allegations that MSC forced him to work outdoors; denied him an office, desk, and computer; and insisted that he work fourteen hours per day run into the statute of limitations bar. *See Willow St. Props., LLC v. Borough of Wood-Ridge*, No. 22-2009, 2022 WL 4300210, at *2 (D.N.J. Sept. 19, 2022) ("[D]ismissal is inappropriate unless it is clear from the facts alleged in the complaint that any such tolling doctrines do not apply." (citing *Schmidt*, 770 F.3d at 251–52)); *Major Tours, Inc. v. Colorel*, 720 F. Supp. 2d 587, 613 (D.N.J. 2010) (denying Rule 12(b)(6) motion where the Court could not definitively determine "from the face of the Complaint whether the continuing violation doctrine appl[ied]").

Next, the Court finds that Plaintiff's allegations that MSC failed to increase his pay upon his promotion in October 2020 can support a timely claim under a standard application of the four-

year statute of limitations. *See Schmidt*, 770 F.3d at 249. These allegations detail compensation decisions which Defendants implemented every pay period.[5] *See* Compl. ¶¶ 43–50. And each paycheck issued pursuant to a discriminatory decision "is a discrete and complete discriminatory act for which a claim may be brought." *Johnson*, 996 F. Supp. 2d at 316. Therefore, Plaintiff has alleged discrete acts of discrimination within the limitations period based on the paychecks he received after April 18, 2021 (*i.e.*, within four years of when he filed his complaint). As such, Plaintiff's pay-related allegations can support a timely disparate treatment claim.[6]

Finally, the Court finds that Plaintiff's allegations related to his status as a salaried employee cannot support a timely disparate treatment claim. *See Schmidt*, 770 F.3d at 249. These allegations detail one discrete act of alleged discrimination: MSC's failure to make Plaintiff a salaried employee upon his promotion in October 2020. Compl. ¶¶ 43–45. Therefore, MSC's alleged failure to make Plaintiff a salaried employee triggered the four-year statute of limitations, which expired roughly six months before Plaintiff filed his complaint.[7] *Johnson*, 996 F. Supp. 2d at 314; *see also O'Connor*, 440 F.3d at 127 (explaining that the continuing violations doctrine does not apply to discrete and complete discriminatory actions). As such, Plaintiff's allegations related to MSC's failure to make him a salaried employee upon his promotion cannot support a timely

---

[5] Plaintiff does not allege how frequently MSC paid him. Nonetheless, he is entitled to all reasonable inferences at the pleadings stage, *see Lutz*, 49 F.4th at 328, including that he was paid according to a regular, periodic schedule.

[6] To be clear, Plaintiff cannot rely on pay-related allegations prior to April 18, 2021, to state a timely disparate treatment claim. As mentioned above, these allegations detail "discrete and complete discriminatory act[s] for which a claim may be brought," *Johnson*, 996 F. Supp. 2d at 316, and the continuing violations doctrine does not apply to discrete and complete discriminatory actions, *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006); *see Booker v. Nat'l R.R. Passenger Corp.*, 880 F. Supp. 2d 575, 585 (E.D. Pa. 2012) ("'[D]iscrete acts of discrimination' cannot be aggregated under a continuing violation theory." (citation omitted)).

[7] The possibility that this single act of alleged discrimination had a lingering effect is not sufficient to invoke the continuing violations doctrine. *See Randall*, 919 F.3d at 199 ("[T]he doctrine relies on a defendant's continuing acts, not a plaintiff's continuing injury.").

disparate treatment claim.  *See Morgan*, 536 U.S. at 113–14; *Evans v. Port Auth. of N.Y. & N.J.*, No. 06-3239, 2007 WL 3071808, at \*10 n.12 (D.N.J. Oct. 18, 2007) (holding that a failure to provide a "salary adjustment" was a "discrete act").

### B.        Plaintiff's Failure to Promote Claim Must Be Dismissed

Plaintiff's failure to promote claim, as alleged in the complaint, is time-barred.  *See Schmidt*, 770 F.3d at 249.  As an initial matter, the Parties disagree on the applicable statute of limitations.  A § 1981 claim is governed by either a two- or four-year statute of limitations "depending on the precise nature of the claim."  *Brown v. Joseph McCormick Constr. Co.*, No. 14-27, 2015 WL 1757646, at \*6 (W.D. Pa. Apr. 17, 2015); *see, e.g.*, *Ke v. Ass'n of Pa. State Coll. & Univ. Facs.*, 447 F. App'x 424, 425 (3d Cir. 2011); *McCreary*, 427 F. App'x at 214.  Plaintiff argues that his failure to promote claim is governed by a four-year statute of limitations, Opp'n Br. at 9, whereas Defendants argue that the claim is governed by a two-year statute of limitations, Reply Br. at 1.  The Court need not decide the issue, because Plaintiff's failure to promote claim is untimely "even under the longer period."  *Wilson v. United States*, 731 F. App'x 95, 96 n.1 (3d Cir. 2018).

Plaintiff filed his complaint on April 18, 2025.  Compl.  Thus, even assuming that the four-year statute of limitations applies, Plaintiff's limitations period extends back to April 18, 2021.  But Plaintiff alleges that he asked for a promotion every year starting in 2015 and then was promoted (albeit in "title only") in October 2020.  *Id.* ¶¶ 19–35.  Therefore, Plaintiff's failure to promote claim centers on conduct before April 18, 2021.  Plaintiff's arguments to the contrary hinge on a strained reading of his complaint, namely that MSC "continued" to deny Plaintiff a promotion *after* promoting him.  Compl. ¶ 55; *see* Opp'n Br. at 10 ("Plaintiff has thus timely alleged Defendants discriminatorily failed to promote Plaintiff in 2021 and 2022." (citing Compl. ¶¶ 19, 55)).  The Court need not credit "allegations that are internally inconsistent," *Amelio v.*

10

*McCabe, Weisberg & Conway, P.C*, No. 14-1611, 2015 WL 4545299, at \*4 (W.D. Pa. July 28, 2015), especially when doing so would require the Court to make "unreasonable inferences" from the complaint's allegations, *Plessinger v. PrimeCare Med., Inc.*, No. 23-519, 2024 WL 1094691, at \*2 (M.D. Pa. Mar. 13, 2024) (citation omitted).  Therefore, the Court will dismiss Plaintiff's failure to promote claim without prejudice.

## IV.    CONCLUSION

Accordingly, for the reasons stated above, **IT IS** on this 26th day of March 2026;

**ORDERED** that the Defendants' motion to partially dismiss (ECF No. 4) is **GRANTED IN PART** and **DENIED IN PART**;

**ORDERED** that Plaintiff's disparate treatment claim, Compl. ¶¶ 65–71, shall proceed consistent with this Opinion and Order; and it is further

**ORDERED** that Plaintiff's failure to promote claim, Compl. ¶¶ 72–78, is **DISMISSED WITHOUT PREJUDICE**; and it is further

**ORDERED** that Plaintiff shall have thirty (30) days from entry of this Opinion and Order to submit a first amended complaint that addresses the deficiencies identified in this Opinion and Order.  Insofar as Plaintiff submits a first amended complaint, he shall also provide a form of the first amended complaint that indicates in what respect it differs from the original complaint, by bracketing or striking through materials to be deleted and underlining materials to be added.  *See* L. Civ. R. 15(b)(2).

**SO ORDERED.**

*/s/ Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**

11